FOGELSANGER *v.* PRICE ET AL. t/a Piney Narrows Marina

[No. 311, September Term, 1971.]

*Decided April 6, 1972.*

The cause was submitted on brief to HAMMOND, C. J., and BARNES, MCWILLIAMS, FINAN and SMITH, JJ.

Submitted by *W. B. Ewers* for appellant.

No brief filed on behalf of appellees.

MCWILLIAMS, J., delivered the opinion of the Court.

We shall be concerned here with a dispute between natural enemies, the yachtsman (Fogelsanger) and the yacht yard (Price). Fogelsanger's discontent seems to have arisen out of a failure of communication in respect of Price's ministrations to his elderly Chris Craft, "Dapper Don II." The case came on for trial in the Circuit Court for Queen Anne's County before Turner, J., sitting without a jury. Price prevailed and from the ensuing judgment against him ($4,220.53) Fogelsanger has appealed. Price will continue to prevail.

Fogelsanger engaged a slip in Price's Piney Narrows Marina on Kent Island in July 1970. In September Price sent to his customers the annual reminder that cold weather was in the offing. He urged "winterizing"— waterfront synecdoche for securing heads, engines, heat exchangers and tanks against freezing. Another service offered was removing storage batteries from the boats and maintaining them at full charge with trickle-chargers. Neither service was performed without express authorization from the owner. Having heard nothing from Fogelsanger, Price telephoned him late in November. According to Price, Fogelsanger directed him to "winterize" the boat and remove and store the (7) batteries. Fogelsanger denies he gave any such instructions.

A week or so after the winterizing and the removal of the batteries had been accomplished the daily check revealed Dapper Don II to be down by the bow. Inspection confirmed that she was making water. Fogelsanger was notified forthwith. Price's men pumped out the water, hauled her, recaulked the leaking seams and put her back in the slip. Fogelsanger was billed for the winterizing and battery service in the amount of $153.50 and shortly thereafter he received a bill for $77 for the pump-

ing, hauling and recaulking. He admits authorizing some of the steps usually taken to prevent damage by freezing but he denies authorizing any work on the engines and he insists it would not have been rational for him to authorize the removal of the batteries because they powered the automatic bilge pumps. The damage occasioned by the water, which would have been pumped out if the batteries had not been removed, was estimated to be about $700. His counterclaim for this amount was dismissed and that seems not to be before us. In this regard it might be noted that while Fogelsanger knew the boat was making water, no one else knew it. Judge Turner chose to believe Price's version of this aspect of the matter and we cannot say his finding was clearly erroneous. Maryland Rule 886.

The balance of this dispute concerns the engines. They had not been running well during the summer of 1970 and Fogelsanger had discussed their reconditioning with Price as early as September. We shall not go into all of the pully-hauly that took place between September and the first part of February when Fogelsanger and Price discussed the engines and what should be done about them. There is no doubt they reached an agreement that the engines should be rebuilt. Price told Fogelsanger that "the parts would run about $2,000" to which, he said, Fogelsanger agreed. Nothing was said about the cost of labor because, as Price said, it would be impossible to estimate how long it would take to do the job. Fogelsanger insists that $2,000 was Price's estimate for both parts and labor. Again Judge Turner chose to believe Price and we cannot say his finding was clearly erroneous. Rule 886.

Price finished the job in March and subsequent tests indicated everything had been done in a satisfactory and workmanlike manner. Indeed Fogelsanger does not dispute this. The parts cost $2,238.35. Labor charges were about $1,600.

There are many quibbles in the record but, as we see

it, an elaborate discussion of them would serve no useful purpose. For instance, Fogelsanger inveighs against the admission of a work order (Plaintiff's Exhibit No. 2) because "it is not a true business record" but the transcript tells us that his counsel informed the court that he had "no objection" to its admission. Rule 885 precludes our consideration of it. There follows an excerpt from the testimony which provides us with an apt coda:

"Q. Mr. Fogelsanger, referring again to the letter of February 13, where on the second page you made an effort to review the work to be done, rebuild the engines, use new oil pumps and so forth, why didn't you again here state it's my understanding that a firm price of $2,000.00 is set for this work?

"A. I don't know, but it's not a mistake I'll make twice."

*Judgment affirmed.*
*Costs to be paid by appellant.*